IN THE UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

FILED

JAN 19 2010

CLERK, U.S. DISTRICT COURT
RICHMOND, VA.

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3: 10CV 38 |
| CG STONY POINT TOWNHOMES, LLC, STEVEN A. MIDDLETON, CPSPT, LLC, GRAY PROPERTY 1005, LLC and GRAY HOLDINGS, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, by and through their undersigned counsel, for their Complaint for Declaratory Judgment against Defendants CG Stony Point Townhomes, LLC, Steven A. Middleton, CPSPT, LLC, Gray Property 1005, LLC and Gray Holdings, LLC, state and allege as follows:

### INTRODUCTION

1.      This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, to determine a real and justiciable controversy among the parties with respect to their rights and obligations, if any, under certain insurance contracts in connection with the certain underlying matters described more fully below.

### PARTIES

2.      Plaintiff Nationwide Mutual Insurance Company ("Nationwide Mutual") is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio.

3.    Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide Mutual Fire") is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio.

4.    Plaintiffs Nationwide Mutual and Nationwide Mutual Fire are collectively referred to hereafter as "Nationwide."

5.    Defendant CG Stony Point Townhomes, LLC ("CG Stony Point") is a Virginia limited liability company with, upon information and belief, its principal place of business in the Commonwealth of Virginia. Upon information and belief, no member of CG Stony Point is a citizen of the State of Ohio.

6.    Defendant Steven A. Middleton ("Middleton") is a natural person. Upon information and belief, Middleton is the sole Member of CG Stony Point, and is a citizen of the Commonwealth of Virginia.

7.    Defendant CPSPT, LLC ("CPSPT") is a Virginia limited liability company with, upon information and belief, its principal place of business in the Commonwealth of Virginia. Upon information and belief, no member of CPSPT is a citizen of the State of Ohio.

8.    Defendant Gray Property 1005, LLC ("Gray 1005") is a Virginia limited liability company with, upon information and belief, its principal place of business in the Commonwealth of Virginia. Upon information and belief, no member of Gray 1005 is a citizen of the State of Ohio.

9.    Defendant Gray Holdings, LLC ("Gray") is a Virginia limited liability company with, upon information and belief, its principal place of business in the Commonwealth of Virginia. Upon information and belief, no member of Gray is a citizen of the State of Ohio.

10.    Defendants CG Stony Point, Middleton, CPSPT, Gray 1005 and Gray are collectively referred to hereafter as "Stony Point."

## JURISDICTION AND VENUE

11.    This Court has diversity jurisdiction over the parties and this action pursuant to 28 U.S.C. §1332(a)(1). Diversity jurisdiction exists because this action is between citizens of different states and because the amount in controversy, exclusive of interest and costs, is in excess of $75,000.00.

12.    Venue in this district is proper pursuant to 28 U.S.C. §1391(a) because Defendants reside in this district; a substantial part of the events giving rise to this action occurred in this district; and the property that is the subject of this action is located in this district.

## FACTUAL BACKGROUND

### The Nationwide Policies

13.    Stony Point seeks coverage in connection with the matters described herein under certain contracts of insurance issued by Nationwide, which, subject to their terms, conditions and exclusions, provide commercial general liability insurance, commercial umbrella liability insurance and/or commercial property insurance for policy periods, as set forth in the insurance contracts, from December 29, 2004 to December 29, 2010 (collectively, "Nationwide Policies"). The Nationwide Policies include, without limitation, the following policies:

| Policy Number | Policy Period | Named Insured |
|---|---|---|
| 53PR 148-642-3001 | December 29, 2004 to December 29, 2005 | CG Stony Point Town |
| 53PR 148-642-3001 | December 29, 2005 to December 29, 2006 | CG Stony Point Town |
| 53PR 148-642-3001 | December 29, 2006 to December 29, 2007 | CG Stony Point Town |
| 53BP 148-642-3003 | November 19, 2006 to December 29, 2006 | CG Stony Point Town |
| 53BP 148-642-3003 | December 29, 2006 to December 29, 2007 | CG Stony Point Town |
| ACP BHPM 2402937466 | December 29, 2007 to December 29, 2008 | CG Stony Point Town |
| ACP BHPM 2412937466 | December 29, 2008 to December 29, 2009 | CG Stony Point Town |

| 53CU 148-642-3002 | January 25, 2005 to December 29, 2005 | CG Stony Point Town |
| 53CU 148-642-3002 | December 29, 2005 to December 29, 2006 | CG Stony Point Town |
| 53CU 148-642-3002 | December 29, 2006 to December 29, 2007 | CG Stony Point Town |
| ACP CAF 2402937466 | December 29, 2007 to December 29, 2008 | CG Stony Point Town |
| ACP CAF 2412937466 | December 29, 2008 to December 29, 2009 | CG Stony Point Town |

The Nationwide Policies are subject to all their terms, conditions and exclusions, which are incorporated herein by reference with the same force and effect as though more fully set forth herein at length. On information and belief, the originals of the Nationwide Policies are or should be in the possession of Stony Point.

### The Stony Point Townhomes and Stony Point's Coverage Claims

14.    Upon information and belief, Stony Point owned certain real property in Richmond, Virginia, on which Stony Point developed a condominium complex known as the Creek's Edge at Stony Point Townhomes ("The Stony Point Townhomes").

15.    Upon information and belief, Stony Point is currently the owner of certain units in The Stony Point Townhomes ("Unsold Stony Point Townhomes").

16.    Upon information and belief, Stony Point is the former owner of certain units in the The Stony Point Townhomes which were sold to third-parties ("the Sold Stony Point Townhomes").

17.    By letter, dated May 20, 2009, from counsel representing Stony Point, Stony Point informed Nationwide that Stony Point determined that drywall imported from China ("Chinese Drywall") was installed in one or more of The Stony Point Townhomes and that Stony Point determined there was evidence of property damage that Stony Point asserted was consistent with Chinese Drywall in one or more of The Stony Point Townhomes. The letter from Stony Point's counsel explained that the Chinese Drywall arrived in the United States on February 14, 2006, was supplied by Venture Supply, Inc. and installed at The Stony Point

Townhomes by The Porter-Blaine Corporation, a subcontractor to Parallel Design and Development, L.L.C, which was the general contractor employed by Stony Point to build the townhouses.

18.    Stony Point's counsel's May 20, 2009 letter specifically referenced each of the policy numbers of the Nationwide Policies listed in Paragraph 13, above, and stated it was putting Nationwide on notice of "all potential claims for property damage; personal injury; breach of contract; breach of warranty; indemnification; contribution; and any and all other related claims arising from the use of [Chinese Drywall] in this project."

19.    By letter, dated May 29, 2009, from Stony Point's counsel, Stony Point informed Nationwide that Stony Point's plan to address Chinese Drywall in the Stony Point Townhomes included, on a case-by-case basis, replacement of all drywall, including non-foreign boards; HVAC coils, air handler and related components; all electrical components (outlets, receptacles, etc.); all structured wiring and related devices; insulation throughout the house; corroded copper piping; carpeting and padding; kitchen and bathroom faucets, non-porcelain sinks; appliances; tile; lighting fixtures; and any related items damaged during remediation.    Stony Point's counsel's letter stated that in exchange for performing these activities, Stony Point would require homeowners to waive personal injury and property damage claims against it.

20.    In an email communication from Stony Point's counsel, dated June 15, 2009, Stony Point informed Nationwide that Chinese Drywall was located in the following townhouses in the Stony Point Townhomes: 9301 Creeks Crossing Boulevard; 9303 Creeks Crossing Boulevard; 9305 Creeks Crossing Boulevard; 9307 Creeks Crossing Boulevard; 9309 Creeks Crossing Boulevard; 9311 Creeks Crossing Boulevard; 9313 Creeks Crossing Boulevard; and 9315 Creeks Crossing Boulevard.

21.     Stony Point has not informed Nationwide which of the activities listed in Paragraph 19, above, it performed or anticipates performing in connection with the townhouses listed in Paragraph 20, above, but Nationwide understands that Stony Point has incurred and/or will incur certain costs in connection with addressing Chinese Drywall, including, without limitation, performing some or all of the activities listed in Paragraph 19, above, in one or more of The Stony Point Townhomes, including, without limitation, the townhouses listed in Paragraph 20, above ("Replacement and/or Repair Costs"). Stony Point has not informed Nationwide of the amount of the Replacement and/or Repair Costs in connection with any or all of the townhouses listed in Paragraph 20, above.

22.     Upon information and belief, Stony Point contends it is entitled to recover Replacement and/or Repair Costs in connection with Chinese Drywall in one or more of The Stony Point Townhomes, including, without limitation, one or more of the townhouses listed in Paragraph 20, above, under the property insurance coverages of the Nationwide Policies ("Stony Point's Property Coverage Claims"). In a letter to Stony Point's counsel, dated June 18, 2009, Nationwide reserved its rights as to Stony Point's Property Coverage Claims.

23.     Upon information and belief, no underlying lawsuits have been filed against Stony Point based on Chinese Drywall in one or more of The Stony Point Townhomes and no written demands or claims have been made against Stony Point by owners of any of The Stony Point Townhomes based on Chinese Drywall in one or more of The Stony Point Townhomes, but Stony Point contends it is entitled to recover Replacement and/or Repair Costs in connection with Chinese Drywall in one or more of The Stony Point Townhomes, including, without limitation, one or more of the townhouses listed in Paragraph 20, above, under the liability insurance coverages of the Nationwide Policies ("Stony Point's Liability Coverage Claims"). In

a letter to Stony Point's counsel, dated June 5, 2009, Nationwide reserved its rights as to Stony Point's Liability Coverage Claims.

**Justiciable Controversy**

24.    A real, substantial and justiciable controversy exists between Nationwide and Stony Point concerning Stony Point's Property Coverage Claims and Stony Point's Liability Coverage Claims, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §§2201 and 2202.

**COUNT I**

**Declaratory Judgment – Stony Point's Property Coverage Claims**

25.    Nationwide realleges and incorporates the allegations of the foregoing paragraphs with the same force and effect as though more fully set forth herein at length.

26.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies with respect to Stony Point's Property Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Property Coverage Claims:

a.    The property coverage of the Nationwide Policies provides coverage only for direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies.

i.    To the extent Stony Point's Property Coverage Claims do not involve direct physical loss of or damage to property, there is no coverage under the property coverage of the Nationwide Policies;

7

ii.    If Stony Point's Property Coverage Claims involve direct physical loss of or damage to property, there is no coverage under the property coverage of the Nationwide Policies to the extent that the property that suffered direct physical loss or damage is not Covered Property, as defined in the Nationwide Policies;

iii.    If Stony Point's Property Coverage Claims involve direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, there is no coverage under the property coverage of the Nationwide Policies to the extent that any such direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, is not at the premises described in the Declarations of the Nationwide Policies; and

iv.    If Stony Point's Property Coverage Claims involve direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies, there is no coverage under the property coverage of the Nationwide Policies to the extent that any such direct physical loss of or damage to property was not caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies.

b.    If Stony Point's Property Coverage Claims involve direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies, there is no coverage under the property coverage of the Nationwide Policies to the extent any such loss or damage is excluded or limited by exclusions or limitations in the Nationwide Policies for:

    i.     loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss";

    ii.     loss or damage caused by or resulting from rust, corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    iii.     loss or damage to personal property caused by the following cause of loss: dampness or dryness of atmosphere; or

    iv.     loss or damage caused by or resulting from faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction, or materials used in repair, construction, renovation or remodeling, of part or all of any property on or off the described premises.

    c.     If Stony Point's Property Coverage Claims involve otherwise covered direct physical loss of or damage to Covered Property, as defined in the Nationwide Policies, at the premises described in the Declarations of the Nationwide Policies caused by or resulting from any Covered Cause of Loss, as defined in the Nationwide Policies, each of the Nationwide Policies only applies to any such loss or damage commencing during the policy period of such Nationwide Policy.

    d.     The Nationwide Policies include a condition precedent, which provides that in the event of loss of or damage to Covered Property, the insured must provide Nationwide with prompt notice of the loss or damage, including a description of the property involved, and, as soon as possible, give Nationwide a description of how, when and where the loss or damage occurred. To the extent the foregoing condition was breached in connection with Stony Point's

Property Coverage claims, there may be no obligation under the property coverage of the Nationwide Policies.

      e.    The Nationwide Policies include a condition, which provides that if the building where loss or damage occurs has been vacant for more than 60 consecutive day before the loss or damage, the amount that Nationwide would otherwise pay for the loss or damage is reduced by 15%. To the extent coverage otherwise exists for Stony Point's Property Coverage Claims under the property coverage of the Nationwide Policies, any such coverage may be limited by said condition.

      f.    If it is determined Nationwide is obligated under the property coverage of some or all of the Nationwide Policies to pay for some or all of Stony Point's Property Coverage Claims, any such obligation is limited by various provisions in the Nationwide Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) Deductible provisions; (iii) Coinsurance percentage provisions; (iv) Loss Payment provisions; (v) Valuation provisions; and (vi) Other Insurance provisions.

      g.    Any additional reasons that may become apparent through further investigation and discovery.

      27.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Stony Point, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

## COUNT II

**Declaratory Judgment – Stony Point's Liability Coverage Claims – No Duty to Defend**

28.     Nationwide realleges and incorporates by reference the allegations in Paragraphs 1 through 24, above, with the same force and effect as though more fully set forth herein at length.

Nationwide Primary Policies

29.     Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies that provide primary liability insurance coverage ("Nationwide Primary Policies") to defend Stony Point in connection with Stony Point's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Liability Coverage Claims:

a.     There is no obligation under the Nationwide Primary Policies to defend Stony Point in connection with the some or all of the claims, if any, against Stony Point on which Stony Point's Liability Coverage Claims are based ("the Purported Underlying Claims") to they extent they are not covered under the insuring agreements of the Nationwide Primary Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.     If any Purported Underlying Claim does not involve a "suit," as that term is defined and used in the Nationwide Primary Policies, against the insured, there is no obligation under the Nationwide Primary Policies to defend Stony Point in connection with any such Purported Underlying Claim.

c.     If some or all of the Purported Underlying Claims involve a "suit" against the insured, there is no obligation under the Nationwide Primary Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent any such "suit" does not

seek damages and allege "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies.

d.    If some or all of the Purported Underlying Claims involve a "suit" against the insured seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent that:

i.    any such "suit" does not allege "property damage" or "bodily injury" during the policy period of any such Nationwide Primary Policy; or

ii.    prior to the policy period of any such Nationwide Primary Policy, the insured knew that any such alleged "property damage" or "bodily injury" had occurred, in whole or in part.

e.    If some or all of the Purported Underlying Claims involve a "suit" against the insured seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under some or all of the Nationwide Primary Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent the allegations of any such "suit" fall within exclusions in some or all of the Nationwide Primary Policies, which provide that this insurance does not apply to:

i.    "Bodily injury" or "property damage" expected or intended by the insured or from the standpoint of the insured;

ii.    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

12

iii.     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

iv.     "Property damage" to property you own, rent or occupy; property you sell, give away or abandon, if the "property damage" arises out of any part of those premises; property loaned to you; personal property in the care, custody or control of the insured; that particular part or real property on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it;

v.     "Property damage" to "your product" arising out of it or any part of it;

vi.     "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"; or

vii.     "Property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

f.     The Nationwide Primary Policies include conditions precedent, which provide that:

i.     The insured must see to it that Nationwide is notified as soon as practicable of an "occurrence" or an offense which may result in a claim and, to the extent possible, notice should include how, when and where the "occurrence" or offense took place; the

names and addresses of any injured persons and witnesses; and the nature and location of any injury or damage arising out of the "occurrence" or offense; and

ii.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without Nationwide's consent.

To the extent the foregoing conditions were breached in connection with any Purported Underlying Claims that involve an otherwise covered "suit," there may be no obligation under the Nationwide Primary Policies to defend Stony Point in connection with any such Purported Underlying Claim.

Nationwide Umbrella Policies

30.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies incepting prior to 2007 that provide commercial umbrella liability coverage ("Nationwide Umbrella Policies") to defend Stony Point in connection with Stony Point's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Liability Coverage Claims:

a.    There is no obligation under the Nationwide Umbrella Policies to defend Stony Point in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If any Purported Underlying Claim does not involve a suit against the "insured," as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim.

14

c.    If some or all of the Purported Underlying Claims involve a suit against the "insured," as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent:

i.    any such suit does not seek damages and allege "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Umbrella Policies; or

ii.    the "underlying limit" of the "underlying insurance," as those terms are defined and used in the Nationwide Umbrella Policies, has not been exhausted by payment of loss.

d.    If some or all of the Purported Underlying Claims involve a suit against the "insured" seeking damages alleging "property damage" or "bodily injury" caused by an "occurrence" and the "underlying limit" of the "underlying insurance" has been exhausted by payment of loss, as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent that:

i.    any such suit does not allege "property damage" or "bodily injury" during the policy period of any such Nationwide Umbrella Policy; or

ii.    prior to the policy period of any such Nationwide Umbrella Policy, the insured knew that any such "property damage" or "bodily injury" had occurred, in whole or in part.

e.    If some or all of the Purported Underlying Claims involve a suit against the "insured" seeking damages alleging "property damage" or "bodily injury" caused by an

"occurrence" and the "underlying limit" of the "underlying insurance" has been exhausted by payment of loss, as those terms are defined and/or used in the Nationwide Umbrella Policies, there is no obligation under some or all of the Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent the allegations of any such suit fall within exclusions in some or all of the Nationwide Umbrella Policies, which provide that this insurance does not apply:

       i.      To bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

       ii.      to bodily injury or property damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time;

       iii.      To property damage to property owned by the insured;

       iv.      To property damage to property rented to, occupied or used by or in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

       v.      To property damage to your products if the property damage arises out of such products or any part of such products, or work performed by you if the property damage arises out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; or

       vi.      To loss of use of tangible property which has not been physically injured or destroyed resulting from a delay or lack of performance by you or on your behalf of any contract or agreement, or the failure of your products or work performed by you or on your behalf to meet the level of performance, quality, fitness or durability warranted or represented by

you.

    f.    The Nationwide Umbrella Policies include conditions precedent, which provide that:

    i.    The insured must promptly notify Nationwide or its agent of any occurrence; tell us how, when and where the occurrence happened; and assist in obtaining the names and addresses of any injured persons and witnesses; and

    ii.    No insured shall, except at their own cost, voluntarily make any payment, assume any obligation or incur any expense.

To the extent the foregoing conditions were breached in connection with any Purported Underlying Claims that involve an otherwise covered suit, there may be no obligation under the Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim.

    g.    The Nationwide Umbrella Policies include a condition precedent, which provides that the insurance is excess over any other collectible insurance. If some or all of the Purported Underlying Claims involve an otherwise covered suit, there is no obligation under the Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent the foregoing condition applies.

2007-2009 Nationwide Umbrella Policies

    31.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Policies incepting in 2007 and thereafter that provide commercial umbrella liability coverage ("the 2007-2009 Nationwide Umbrella Policies") to defend Stony Point in connection with Stony Point's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Liability

Coverage Claims:

     a.     There is no obligation under the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the 2007-2009 Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

     b.     If the applicable limit of "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies, has not been exhausted by payment of claims or if any Purported Underlying Claim falls within the exclusions applicable to the "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies, which are made applicable to Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Polices, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim.

     c.     If the applicable limit of "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies, has been exhausted by payment of claims, the terms and conditions of the "underlying insurance" are made a part of the Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies, except with respect to any contrary provision in the 2007-2009 Nationwide Umbrella Policies or any provision in the 2007-2009 Nationwide Umbrella Policies for which a similar provision is not contained in the "underlying insurance," and to the extent there is no obligation to defend Stony Point in connection with some or all of the Purported Underlying Claims under the "underlying insurance," there is no obligation to defend Stony Point in connection with any such Purported

Underlying Claims under Coverage A- Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies.

      d.     If the applicable limit of "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies, has been exhausted by payment of claims, there is no obligation to defend Stony Point in connection with any such Purported Underlying Claim under Coverage A- Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to the extent any such Purported Underlying Claim was settled without Nationwide's consent.

      e.     If some or all of the Purported Underlying Claims are not for damages for alleged "property damage" or "bodily injury," as those terms are used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim.

      f.     If some or all of the Purported Underlying Claims seek damages for alleged "property damage" or "bodily injury," as those terms are defined and/or used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent that:

      i.     prior to the policy period of any such 2007-2009 Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part;

        ii.    "underlying insurance" or "other insurance," as those terms are defined and/or used in the 2007-2009 Nationwide Umbrella Policies, applies to any such Purported Underlying Claim;

        iii.    any alleged "property damage" or "bodily injury" was not caused by an "occurrence," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies; or

        iv.    any alleged "property damage" or "bodily injury" did not take place during the policy period of the 2007-2009 Nationwide Umbrella Policies.

        g.    If some or all of the Purported Underlying Claims seek damages for alleged "property damage" or "bodily injury" caused by an "occurrence" and no "underlying insurance" or "other insurance," as those terms are defined and/or used in the 2007-2009 Nationwide Umbrella Policies, applies to any such Purported Underlying Claim, there is no obligation under Coverage B – Umbrella Liability Insurance of some or all of the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim to the extent the allegations thereof fall within exclusions in some or all of the 2007-2009 Nationwide Umbrella Policies, which provide that Coverage B does not apply to:

        i.    "Property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work", or a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms;

        ii.    "Property damage" to property you own; that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations;

20

that particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it; or any damage to real or personal property, if the property is in the care, custody or control of the "insured" or as to which the "insured" is for any purpose exercising physical control;

        iii.    "Property damage" to "your product" arising out of it or any part of it;

        iv.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard";

        v.    "Bodily injury" or "property damage" expected or intended from the standpoint of the "insured";

        vi.    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or

        vii.    Any punitive or exemplary damages, fines or penalties.

    h.    The 2007-2009 Nationwide Umbrella Policies include conditions precedent, which provide that:

        i.    The insured must see to it that Nationwide and the insured's underlying insurers are notified as soon as possible of any "occurrence" which may result in a claim if the claim may involve this insurance or any "underlying insurance" and receive notice of the claim or "suit" as soon as possible;

        ii.    The insured not make any admission of liability; and

        iii.    The insured not, unless Nationwide agrees, incur any expense or make any payment other than for first aid. Any such unauthorized expenses will be the insured's own cost.

To the extent the foregoing conditions were breached in connection with any otherwise covered Purported Underlying Claim, there may be no obligation under the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim.

i.      The 2007-2009 Nationwide Umbrella Policies include a condition precedent, which provides that if "other insurance" applies to claims covered by these policies, the insurance under these policies is excess and will not make any payments until the "other insurance" has been exhausted by payment of claims. To the extent "other insurance" applies to any otherwise covered Purported Underlying Claim, there is no obligation under the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any such Purported Underlying Claim.

32.     If it is determined Nationwide is obligated under some or all of the Nationwide Primary Policies, Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any Purported Underlying Claim, any purported costs of defending any such Purported Underlying Claim incurred prior to proper tender to Nationwide of the defense of any such Purported Underlying Claim or that are not reasonable and necessary costs of defending any such Purported Underlying Claim are not recoverable.

33.     If it is determined Nationwide is obligated under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any of the Purported Underlying Claims, any such obligation is limited by various provisions in the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) limits of liability

provisions; (iii) per occurrence and aggregate limits of liability provisions; (iv) other insurance provisions; and (v) a provision that if more than one Nationwide Policy applies to the same occurrence, the total maximum amount payable by Nationwide shall not exceed the highest applicable limit under any one Nationwide Policy.

34.    If Nationwide is adjudicated liable to any extent under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies to defend Stony Point in connection with any of the Purported Underlying Claims, Nationwide is entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Stony Point has or had with any other insurance company, any self-insurance provided by Stony Point, and all other such factors as may bear on this issue.

35.    Nationwide reserves its rights to assert any additional reasons that may become apparent through further investigation and discovery.

36.    Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Stony Point, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

### COUNT III

**Declaratory Judgment – Stony Point's Liability Coverage Claims – No Duty to Indemnify**

37.    Nationwide realleges and incorporates by reference the allegations in Paragraphs 1 through 24, above, with the same force and effect as though more fully set forth herein at length.

Nationwide Primary Policies

38.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Primary Policies to indemnify Stony Point in connection with Stony Point's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Liability Coverage Claims:

a.    There is no obligation under the Nationwide Primary Policies to indemnify Stony Point in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the Nationwide Primary Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.    If any Purported Underlying Claim does not involve sums that the insured becomes legally obligated to pay as damages, as that term is used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

c.    If some or all of the Purported Underlying Claims involve sums that the insured becomes legally obligated to pay as damages, as that term is used in the Nationwide Primary Policies, there is no obligation under the Nationwide Primary Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent it does not involve "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Primary Policies.

d.    If some or all of the Purported Underlying Claims involve sums that the insured becomes legally obligated to pay as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary

Policies, there is no obligation under the Nationwide Primary Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent that:

       i.     it does not involve "property damage" or "bodily injury" during the policy period of any such Nationwide Primary Policy; or

      ii.     prior to the policy period of any such Nationwide Primary Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part.

    e.     If some or all of the Purported Underlying Claims involve sums that the insured becomes legally obligated to pay as damages because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and/or used in the Nationwide Primary Policies, there is no obligation under some or all of the Nationwide Primary Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent it falls within exclusions in some or all of the Nationwide Primary Policies listed in Paragraph 29(e), above, which are incorporated herein by reference.

    f.     The Nationwide Primary Policies include conditions precedent listed in Paragraph 29(f), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached in connection with any otherwise covered Purported Underlying Claim, there may be no obligation under the Nationwide Primary Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

<u>Nationwide Umbrella Policies</u>

    39.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the Nationwide Umbrella Policies to indemnify Stony Point in connection with Stony Point's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Liability Coverage Claims:

a.      There is no obligation under the Nationwide Umbrella Policies to indemnify Stony Point in connection with the some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the Nationwide Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.      If any Purported Underlying Claim does not involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

c.      If some or all of the Purported Underlying Claims involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent it does not involve "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies.

d.      If some or all of the Purported Underlying Claims involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under the Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent that:

i.      any such "property damage" or "bodily injury" did not take place during the policy period of any such Nationwide Umbrella Policy; or

26

ii.    prior to the policy period of any such Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part.

e.    If some or all of the Purported Underlying Claims involve "ultimate net loss" in excess of the "underlying limit" or the "retained limit," whichever is greater, because of "property damage" or "bodily injury" caused by an "occurrence," as those terms are defined and used in the Nationwide Umbrella Policies, there is no obligation under some or all of the Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent it falls within exclusions in some or all of the Nationwide Umbrella Policies listed in Paragraph 30(e), above, which are incorporated by reference.

f.    The Nationwide Umbrella Policies include conditions precedent listed in Paragraph 30(f) and (g), above, which are incorporated herein by reference. To the extent the foregoing conditions were breached or apply in connection with any otherwise covered Purported Underlying Claims, there is no obligation under the Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

2007-2009 Nationwide Umbrella Policies

40.    Nationwide requests that the court determine and declare the extent of Nationwide's obligations, if any, under the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with Stony Point's Liability Coverage Claims in consideration of the following grounds, *inter alia*, as they may apply to Stony Point's Liability Coverage Claims:

a.    There is no obligation under the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with some or all of the Purported Underlying Claims to the extent they are not covered under the insuring agreements of the 2007-2009 Nationwide

Umbrella Policies or are excluded by the terms, conditions, exclusions, endorsements and limitations in said policies.

b.      If any Purported Underlying Claim does not involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

c.      If some or all of the Purported Underlying Claims involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent it falls within the exclusions applicable to the "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies, which are made applicable to Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Polices.

d.      If some or all of the Purported Underlying Claims involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2007-2009 Nationwide Umbrella Policies, the terms and conditions of the "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies, are made a part of the Coverage A – Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies, except with respect to any contrary provision in the 2007-2009 Nationwide Umbrella Policies or any provision in the 2007-2009 Nationwide Umbrella Policies for which a similar provision is not contained in the "underlying insurance," and to the extent

there is no obligation to indemnify Stony Point in connection with some or all of the Purported Underlying Claims under the "underlying insurance," there is no obligation to indemnify Stony Point in connection with any such Purported Underlying Claims under Coverage A- Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies.

e.    If some or all of the Purported Underlying Claims involve "loss" in excess of the total applicable limits of "underlying insurance," as those terms are defined and used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation to indemnify Stony Point in connection with any such Purported Underlying Claim under Coverage A- Excess Follow Form Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to the extent any such Purported Underlying Claim was settled without Nationwide's consent.

f.    If any Purported Underlying Claim is not for damages, as that term is used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

g.    If some or all of the Purported Underlying Claims are for damages, as that term is used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent any damages are not damages the "insured" is legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury," as those terms are defined and/or used in the 2008-2010 Nationwide Umbrella Policies.

h.    If some or all of the Purported Underlying Claims are for damages the "insured" becomes legally obligated to pay by reason of liability imposed by law or assumed under an

"insured contract" because of "property damage" or "bodily injury," as those terms are defined and/or used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under Coverage B – Umbrella Liability Insurance of the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent that

      i.     prior to the policy period of any such 2007-2009 Nationwide Umbrella Policy, the insured knew that such "property damage" or "bodily injury" had occurred, in whole or in part;

      ii.     insurance for any such Purported Underlying Claim is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies;

      iii.     any "property damage" or "bodily injury" was not caused by an "occurrence," as that term is defined and used in the 2007-2009 Nationwide Umbrella Policies; or

      iv.     any "property damage" or "bodily injury" did not take place during the policy period of the 2007-2009 Nationwide Umbrella Policies.

      i.     If some or all of the Purported Underlying Claims are for damages the "insured" becomes legally obligated to pay by reason of liability imposed by law or assumed under an "insured contract" because of "property damage" or "bodily injury" caused by an "occurrence" and no coverage is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance," as those terms are defined and/or used in the 2007-2009 Nationwide Umbrella Policies, there is no obligation under

Coverage B – Umbrella Liability Insurance of some or all of the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim to the extent it falls within exclusions in some or all of the 2007-2009 Nationwide Umbrella Policies listed in Paragraph 31(h), above, which are incorporated by reference.

j.      The 2007-2009 Nationwide Umbrella Policies include conditions precedent listed in Paragraphs 31(i) and (j), above, which are incorporated by reference.   To the extent the foregoing conditions were breached or apply in connection with any otherwise covered Purported Underlying Claim, there may be no obligation under the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any such Purported Underlying Claim.

41.     If it is determined Nationwide is obligated under the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any of the Purported Underlying Claims, any such obligation is limited by various provisions in the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies, including, without limitation, the following: (i) Limits of Insurance provisions; (ii) limits of liability provisions; (iii) per occurrence and aggregate limits of liability provisions; (iv) other insurance provisions; and (v) a provision that if more than one Nationwide Policy applies to the same occurrence, the total maximum amount payable by Nationwide shall not exceed the highest applicable limit under any one Nationwide Policy.

42.     If Nationwide is adjudicated liable to any extent under some or all of the Nationwide Primary Policies, the Nationwide Umbrella Policies or the 2007-2009 Nationwide Umbrella Policies to indemnify Stony Point in connection with any of the Purported Underlying

Claims, Nationwide is entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Stony Point has or had with any other insurance company, any self-insurance provided by Stony Point, and all other such factors as may bear on this issue.

43.      Nationwide reserves its rights to assert any additional reasons that may become apparent through further investigation and discovery.

44.      Accordingly, a real, substantial and justiciable controversy exists between Nationwide and Stony Point, which is properly subject to resolution by this Court pursuant to 28 U.S.C. §2201, *et seq.*

WHEREFORE, Nationwide prays for judgment as follows:

1.      Declaring Nationwide has no obligations under the property coverages of the Nationwide Policies in connection with the Stony Point Property Coverage Claims;

2.      Alternatively, declaring the extent of Nationwide's obligations under the property coverages of the Nationwide Policies in connection with the Stony Point Property Coverage Claims;

3.      Declaring Nationwide has no obligation under the Nationwide Policies to defend Stony Point in connection with the Stony Point Liability Coverage Claims;

4.      Alternatively, declaring the extent of Nationwide's obligations under the Nationwide Policies to defend Stony Point in connection with the Stony Point Liability Coverage Claims;

5.      Declaring Nationwide has no obligation under the Nationwide Policies to indemnify Stony Point in connection with the Stony Point Liability Coverage Claims;

6. Alternatively, declaring the extent of Nationwide's obligations under the Nationwide Policies to indemnify Stony Point in connection with the Stony Point Liability Coverage Claims;

7. Awarding Nationwide its attorneys fees, costs and disbursements; and

8. Such other and further relief as this Court may deem just and proper.

**NATIONWIDE REQUESTS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Dated: January 19, 2010

Respectfully submitted,

NATIONWIDE MUTUAL INSURANCE
COMPANY and NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY
By Counsel

MORRIS & MORRIS, PC

Lawrence A. Dunn
Virginia State Bar #30324
Grant E. Kronenberg
Virginia State Bar #65647
Attorneys for Plaintiffs
Morris & Morris P.C.
700 East Main Street
Suite 1100
P.O. Box 30
Richmond, VA  23218-0030
Tel. (804) 344-8300
Fax  (804) 344-8359
ldunn@morrismorris.com
gkronenberg@morrismorris.com